# IN THE COURT OF APPEALS OF IOWA

No. 20-1081
Filed November 4, 2020

**IN THE INTEREST OF H.Q.,**
**Minor Child,**

**K.Q., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother appeals the juvenile court order terminating her parental rights. **AFFIRMED.**

Morgan Wilson of Iowa Legal Aid, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Andrew Thalacker of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DANILSON, Senior Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find that granting the mother an extension of time is not in the child's best interests. Also, termination of the mother's parental rights, rather than placing the child in a guardianship, is in the child's best interests. We affirm the decision of the juvenile court.

### I.  Background Facts & Proceedings

K.Q. is the mother and S.Q. is the father of H.Q., who was born in 2017.[1] The Iowa Department of Human Services (DHS) became involved with the family in late 2018 due to the mother's mental-health and substance-abuse problems. The mother tested positive for amphetamines, methamphetamine, and marijuana. In October 2018, the mother agreed to place the child with the maternal grandparents. She began a substance-abuse treatment program.

On February 29, 2019, the child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). The child was formally removed from the mother's care at that time and placed in the home of the maternal grandparents.

Despite relapses in June and September, on October 22, 2019, the juvenile court found the mother was making progress in addressing her substance-abuse problems. The court deferred permanency, stating, "An additional three to six months will allow [the mother] to prove to the Court that she can remain sober and that sobriety is her goal." The mother relapsed again in December 2019. On

---

[1] The father had very little involvement during the course of the juvenile court proceedings. He has not appealed the termination of his parental rights.

January 22, 2020, the court determined the matter should be set for a termination hearing. The court found "[the mother's] recent relapse proves that her sobriety is incredibly fragile and she must continue to work toward lengthy sobriety."

A petition for termination of parental rights was filed on March 2, 2020. The mother had positive drug tests in March, May, and June. The termination hearing was held on July 21. The mother's DHS worker testified the mother was inconsistent in participating in substance-abuse treatment and mental-health counseling. In addition, the mother did not have stable housing, employment, or transportation. The mother noted that due to COVID-19, the substance-abuse treatment program did not have group meetings, although she was able to continue to have individual meetings. Also, she could not have face-to-face meetings with the child for several months. DHS offered video visits during this time.

The juvenile court terminated the mother's parental rights under section 232.116(1)(e), (f), and (*l*) (2020). The court stated:

> [The mother] has been unable to remain sober for more than 3 to 4 months at a time. She has continued to use methamphetamine even while attending substance abuse treatment. She has been dishonest and manipulative concerning her use. Given her setbacks concerning the relapses, she has also been unable to significantly address her mental health concerns. She has been unable to become employed and self-sufficient.

The court determined termination was in the child's best interests. The court found a guardianship would not be appropriate because it could be a significant amount of time, if ever, before the mother would be capable of caring for the child. The mother appeals the juvenile court's decision.

## II.    Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Here, the mother has not challenged any of the grounds for termination but rather claims the juvenile court erred in not granting her additional time or, alternatively, failing to order a guardianship in lieu of termination.

## III.    Extension of Time

The mother claims the juvenile court should have given her additional time to work on reunification. She asserts there was a recommendation for her to attend group substance-abuse treatment meetings but due to the COVID-19 pandemic, the facility where she was receiving treatment no longer had group meetings. She was able to continue with individual substance-abuse treatment sessions. Additionally, the mother did not have face-to-face visitation with the child for several months due to the pandemic. The mother states the progress of her case was stalled because of the pandemic, so she should receive more time.

The juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that CINA proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). The court may continue the proceedings

for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

"[T]he onset of the COVID-19 pandemic was beyond the parents' or the court's ability to control." *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at *8 (Iowa Ct. App. 2020). During this time, services were still offered to the mother, and she was able to participate in services. The mother had the ability to continue treatment during the pandemic, although the facility was not having group meetings, as the facility continued to offer individual sessions. Concerning visitation, the DHS worker testified face-to-face visits were not offered from about March 20 to June 1. The child was able to see the mother by video during this time.

On the issue of additional time, the juvenile court stated, "[The mother] has failed to make significant progress during the time period of this case. Currently her child has been removed from her custody for 21 months, and the child was 15 months old when the removal began. [The mother] also suffers from a lack of honesty." The court notes the mother has "never been able to string together months of sobriety." We are unable to make a finding that "the need for removal . . . will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). We are sensitive to the frustration and difficulties caused by the COVID-19 pandemic, and such difficulties may give rise to continuances or extensions. However, here the mother was already granted a delay of about three months by the juvenile court and the mother relapsed. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a

parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). We agree with the court's conclusion that a further extension of time is not in the child's best interests.

### IV.    Guardianship

The mother contends that rather than terminating her parental rights, the juvenile court should have placed the child in a guardianship with the maternal grandparents due to the closeness of the bond between the mother and child. The maternal grandfather testified he and the maternal grandmother would like to have the child in a guardianship because they felt this would give the mother incentive to work toward sobriety. He stated that if the mother achieved sobriety in a year or two, she could be reunited with the child. The maternal grandfather also testified he and the maternal grandmother were willing to adopt the child if the mother's parental rights were terminated.

The Iowa Supreme Court has stated:

Importantly, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). If the court transferred guardianship and custody to the child's maternal grandparents, they would have to report to the court at least annually, and the guardianship would not terminate until the child reaches the age of majority . . . . *See* Iowa Code § 232.117(6)–(8) (setting out requirements for the guardian to report to the court); *id.* § 232.118(3) (providing that "[t]he authority of a guardian appointed by the court terminates when the child reaches the age of majority or is adopted"). The court could also, on its own motion, later remove the maternal grandparents and appoint a different guardian. *See id.* § 232.118(1).

*In re A.S.*, 906 N.W.2d 467, 447–48 (Iowa 2018).

The juvenile court considered a guardianship with the maternal grandparents and found it would not be appropriate under the facts in this case. The court found, "The child at issue is less than three years old and cannot wait a significant period of time for her mother to become capable of being the child's custodian." The child needs stability, rather than the uncertainty that would come from a guardianship. We conclude termination of the mother's parental rights is in the child's best interests.

We affirm the decision of the juvenile court.

**AFFIRMED.**